1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ANDREW SWARTZ,                    CASE NO. CV 17-4186 SS

12              Plaintiff,

13      v.
                                      **MEMORANDUM DECISION AND ORDER**
14  NANCY A. BERRYHILL, Acting
    Commissioner of Social
15  Security,

16              Defendant.

17

18                              **I.**

19                         **INTRODUCTION**

20

21      Andrew Swartz ("Plaintiff") brings this action seeking to

22  overturn the decision of the Acting Commissioner of Social Security

23  (the "Commissioner" or "Agency") denying his application for

24  Supplemental Security Income.  The parties consented, pursuant to

25  28 U.S.C. § 636(c), to the jurisdiction of the undersigned United

26  States Magistrate Judge.  (Dkt. Nos. 13-15).  For the reasons

27  stated below, the Court AFFIRMS the Commissioner's decision.

28

## II.

### PROCEDURAL HISTORY

On December 30, 2013, Plaintiff filed an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act alleging a disability onset date of July 15, 2009. (AR 56, 114-21). The Commissioner denied Plaintiff's application initially. (AR 55-68). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on February 10, 2016. (AR 69-80, 35-54). The ALJ issued an adverse decision on March 4, 2016, finding that Plaintiff was not disabled because he was capable of performing his past relevant work as a telemarketer, and there are other jobs in the national economy that he can perform. (AR 23-31). On April 10, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-6). This action followed on June 5, 2017.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on July 26, 1967. (AR 131). He was forty-eight (48) years old when he appeared before the ALJ on February 10, 2016. (AR 38). Plaintiff has a high-school degree and completed three years of college. (AR 38, 136). He is single and lives in a group home. (AR 114, 146). Plaintiff last worked in June 2009 as a telemarketer. (AR 135, 141). He alleges disability due to chronic asthma and chronic migraines. (AR 135).

## A.   Plaintiff's Testimony

Plaintiff testified that he stopped working after missing too many days of work due to his migraine headaches.  (AR 40). Plaintiff asserted that he still gets migraines three to four times a week, which can last from a day to two days.  (AR 41-42).  When he experiences migraines, he needs to lay down in a dark room.  (AR 43).  His head pounds and hurts more when he stands up.  (AR 47). Sometimes he also experiences nausea and vomiting.  (AR 47-48). Plaintiff avoids strenuous activities, which tend to bring on his headaches.  (AR 45).

Plaintiff takes Imitrex for his migraines, but he claims that he has mixed results.[1]   (AR 41).   "Sometimes it will make the headache not as severe or as long, but as lot of times it really doesn't have a great effect."  (AR 41).   Plaintiff acknowledged that in the past, he self-medicated for his migraines and became addicted to "substances."  (AR 50).

## B.   Treatment History

Plaintiff began treating with Wesley Health Centers in July 2013.  (AR 188).  He complained of a light cough due to his asthma but denied any other complaints.  (AR 188).  He stated that his

---

[1] Imitrex (sumatriptan) "is used to treat migraine headaches. Imitrex will only treat a headache that has already begun.  It will not prevent headaches or reduce the number of attacks." <https://www.drugs.com/imitrex.html> (last visited March 8, 2018).

migraine headaches are controlled by Naproxen. (AR 188). Plaintiff's doctor instructed him to avoid taking caffeine products and engage in a regular exercise program. (AR 189). In October 2013, Plaintiff denied any migraine symptoms. (AR 191). In December 2013, Plaintiff acknowledged that he continues to use caffeine and energy drinks on a daily basis, but reported that his migraines were being controlled by Naproxen. (AR 195).

In January and March 2014, Plaintiff acknowledged still consuming caffeine and energy drinks daily, but did not report any migraine symptoms. (AR 198, 221, 224, 229-30). On March 20, 2014, Plaintiff reiterated that his migraine headaches are controlled with Naproxen. (AR 229). Relpax (eletriptan) was also prescribed to be used as needed. (AR 231, 237). In October 2014, Plaintiff reported that his migraine symptoms were controlled with medications. (AR 281). Relpax was discontinued and Imitrex prescribed. (AR 281, 283). Plaintiff was advised to take one 50mg tablet as early as possible after onset of a migraine attack, which may be repeated after two hours if the headache returns, not to exceed 200mg in a 24-hour period. (AR 286). In November 2014, Plaintiff did not report any migraine attacks, but acknowledged continuing to use caffeine and energy drinks. (AR 287-89). A neurological examination was normal. (AR 289).

In March and July 2015, Plaintiff asserted that his migraines were controlled with Imitrex. (AR 290, 292, 298, 309). A neurological examination was normal. (AR 292, 309). In December 2015, Plaintiff reported that his migraine symptoms, which he

described as "moderate," are chronic and occur randomly. (AR 302). He further acknowledged that the symptoms are usually relieved with Imitrex. (AR 302). His doctor diagnosed migraine <u>without</u> status migrainosus, <u>not</u> intractable, unspecified migraine type, concluding that it was "fairly controlled with current management."[2] (AR 302, 304) (emphasis added).

On April 10, 2014, Steven B. Gerber, M.D., performed an internal medicine evaluation at the request of the Agency. (AR 205-09). Plaintiff reported experiencing headaches for many years, asserting that they now occur two to three times weekly, lasting for up to two days. (AR 205). The headaches are occasionally accompanies by nausea and vomiting, but no visual disturbances. (AR 205). Plaintiff stated that the migraines are triggered by chocolate, wine, and cheese, and are relieved with medications. (AR 205). A neurological examination was unremarkable. (AR 208-09). Dr. Gerber concluded that while Plaintiff has a history of migraine headaches, Dr. Gerber observed "no abnormalities on neurologic examination today." (AR 209). He opined that Plaintiff can lift or carry twenty pounds occasionally and ten pounds frequently; stand, walk, or sit for six hours in an eight-hour day;

---

[2] Cf. <https://migraine.com/blog/the-ins-and-outs-of-intractable/> (last visited March 8, 2018) ("Intractable migraine, also called refractory migraine and/or status migrainosus, is the medical term used to describe a persistent migraine that is either 1) difficult to treat or b) fails to respond to standard and/or aggressive treatments.").

and should avoid concentrated exposure to dust and fumes. (AR 209).

**C.   State Agency Consultant**

On April 24, 2014, Jerry Thomas, M.D., a state agency consultant, reviewed all the available evidence in the medical file. (AR 56-64). Dr. Thomas opined that Plaintiff's statements regarding his symptoms were not consistent with the preponderance of evidence in the file. (AR 61). He concluded that Plaintiff can occasionally lift twenty pounds, frequently lift ten pounds; stand, walk, or sit six hours in an eight-hour workday; and should avoid even moderate exposure to fumes, odors, dusts, or gasses. (AR 61-62).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel,

180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)    Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)    Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)    Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)    Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)    Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 31). At step one, the ALJ found

that Plaintiff has not engaged in substantial gainful activity since December 30, 2013, the application date. (AR 25). At step two, the ALJ found that Plaintiff's migraine headaches, asthma, hypertension, hyperlipidemia/dyslipidemia, and clinical obesity are severe impairments. (AR 25). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 25).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform light work, as defined in 20 C.F.R. § 416.967(b),[3] except that Plaintiff is limited to "no exposure to dusts or fumes as defined in the DOT and no hazards as defined in the DOT." (AR 25). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a telemarketer. (AR 29). Alternatively, based on Plaintiff's RFC, age, education, work experience and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including assembler/small products, inspector, and marker. (AR 30).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

Accordingly, the ALJ found that Plaintiff was not under a disability, as defined by the Social Security Act, at any time since December 30, 2013, the application date. (AR 31).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must " 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' " Auckland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir.

10

1993)).  If the evidence can reasonably support either affirming
or reversing that conclusion, the court may not substitute its
judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-
21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

### DISCUSSION

Plaintiff contends that the ALJ erred for the following two
reasons: (1) the ALJ impermissibly rejected the opinions of his
treating physician; and (2) the ALJ impermissibly found Plaintiff's
testimony not credible.  (Dkt. No. 19 at 3-15).

## A.   **The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Specific, Clear and Convincing**

Plaintiff asserted that he is unable to work due to chronic
asthma and chronic migraine headaches.[4]  (AR 135).  He testified
that he gets migraines three to four times a week, which can last
up to a day or two.  (AR 42).  He takes Imitrex for his migraines,
but he has mixed results.  (AR 41).  "Sometimes it will make the
headache not as severe or as long, but a lot of times it really
doesn't have a great effect."  (AR 41).  Sometimes, he does not

---

[4] The ALJ accommodated Plaintiff's asthma by restricting him to "no
exposure to dust or fumes . . . and no hazards."   (AR 25).
Plaintiff does not dispute the ALJ's finding in this regard.  (See
generally Dkt. No. 19 at 11-15).

take the Imitrex because he doesn't "feel it really works."  (AR 47).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 874 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

"This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence

presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ provided multiple, specific, clear, and convincing reasons to find Plaintiff's complaints of disabling migraine headaches only partially credible. (AR 23). These reasons are sufficient to support the Commissioner's decision.

The ALJ found that Plaintiff's claims of debilitating migraines, occurring three to four times a week and lasting up to a day or two, were belied by treatment notes, which indicated that his migraines were moderate and "random". (AR 26, 29). Indeed, in December 2015, Plaintiff reported that his migraines, while

14

chronic, are "moderate" and occur only randomly. (AR 302; <u>accord</u> <u>id.</u> 28). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1161 (9th Cir. 2008); <u>see</u> SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

In contrast to his testimony that Imitrex does not work, Plaintiff consistently reported to his treating doctors that his migraines, when they did occur, were controlled with medication. (AR 188, 229, 231, 237, 281, 283, 290, 292, 298, 302, 304, 309; <u>accord</u> <u>id.</u> 26-27, 28, 29). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." <u>Warre v. Comm'r of Soc.</u> <u>Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff's acknowledgment that he achieved "fair relief" of his headaches through over-the-counter medications and were "controlled" with prescription medications (AR 229, 281; <u>accord</u> <u>id.</u> 27) indicates that his migraines were not as disabling as his testimony suggested. See <u>Tommasetti</u>, 553 F.3d at 1039-40 (ALJ may properly infer that claimant's pain "was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program").

Plaintiff's migraines were addressed with conservative treatment.  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999), as amended (June 22, 1999) ("Meanel's claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received.").  The ALJ noted that Plaintiff was advised to control his migraines merely by avoiding caffeine products and engaging in regular exercise.  (AR 189; accord id. 26).  Plaintiff, however, continued to consume caffeine, against the advice of this doctor.  (AR 195, 198, 221, 224, 229-30, 287-89; accord id. 27).  Instances of noncompliance with a treatment regimen may properly be weighed against a claimant's credibility.  Trevizo, 874 F.3d at 681.

Plaintiff's claims of debilitating symptoms were contradicted by clinical tests.  Multiple neurological examinations were unremarkable.  (AR 208-09, 289, 292, 309; accord id. 27).  While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, it is a factor that the ALJ may consider when evaluating credibility.  Bray, 554 F.3d at 1227; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Rollins, 261 F.3d at 857.

Finally, Plaintiff's allegations were internally inconsistent.  See 20 C.F.R. § 416.929(c)(4) (ALJ may consider inconsistencies in the claimant's testimony); Burch, 400 F.3d at

680 ("an ALJ may engage in ordinary techniques of credibility evaluation, such as . . . inconsistencies in claimant's testimony"). While Plaintiff asserted in his disability application that he stopped working in 2009 due to chronic asthma and chronic migraines, he testified that he stopped working in 2009 due to substance abuse issues and did not become sober until 2013. (Compare AR 40, 114, 135, 205, with id. 50). Thus, the ALJ could properly infer that "[Plaintiff's] disability allegations are also somewhat diminished given his testimony that his sparse work history is due to past substance abuse. This raises the question as to whether [Plaintiff's] continued unemployment is actually due to his medical condition." (AR 26).

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings. Accordingly, because substantial evidence supports the ALJ's assessment of Plaintiff's credibility, no remand is required.

**B.** **The ALJ Provided Specific And Legitimate Reasons For Rejecting Dr. Bleakley's Opinions**

Plaintiff contends that the ALJ failed to properly evaluate the opinions of Dennis Bleakley, M.D., regarding Plaintiff's limitations from his migraine headaches. (Dkt. No. 19 at 3-11).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons

that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) ("As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss, 427 F.3d at 1216; see Lester, 81 F.3d at 830-31 ("And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."). Further, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. Bayliss, 427 F.3d at 1216; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

On March 20, 2014, Dr. Bleakley, Plaintiff's treating physician, completed a Migraine Headache Form at the request of the Agency. (AR 202). He reported that Plaintiff's bitemporal migraines occur two-to-three times weekly and last for a day. (AR 202). Plaintiff's symptoms include nausea, vomiting, photophobia, throbbing, and pulsing. (AR 202). He opined that Plaintiff has a "fair" response to his medications, but that his migraines would interfere with his ability to work, causing him to miss two-to-three days of work per week. (AR 202).

On November 6, 2014, Dr. Bleakley completed a Physical RFC Questionnaire at the request of Plaintiff. (AR 242-46). He opined that Plaintiff's prognosis was "good with treatment." (AR 242). Plaintiff's migraine pain, which he characterized as 10/10, is accompanied by nausea and photophobia, and is triggered by certain foods. (AR 242). Nevertheless, Dr. Bleakley acknowledged that a neurological examination was "normal" and that Plaintiff's migraines are relieved if Plaintiff takes Imitrex at the outset of an attack. (AR 242-43). He opined that Plaintiff's migraines cause frequent interruptions with concentration and attention and a marked limitation in Plaintiff's ability to cope with work stresses. (AR 243-44). Dr. Bleakley also concluded that when Plaintiff has a migraine, he would be able to sit or stand only five minutes continuously and less than two hours during an eight-hour workday, and can lift less than ten pounds. (AR 244-45). He opined that Plaintiff would have good days and bad days and would likely miss more than three days a month due to his migraines. (AR 246).

The ALJ gave "little weight" to Dr. Bleakley's opinions because they were internally inconsistent, contrary to his own treatment notes, unsupported by clinical testing, based on Plaintiff's subjective allegations, and contradicted by the opinions of the consultative examiner and the state agency consultant. (AR 28). The ALJ has provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Bleakley's opinions.

Dr. Bleakley's opinion that Plaintiff suffers from significant functional limitations due to his migraine headaches is inconsistent with Dr. Bleakley's observation that Plaintiff's prognosis is "good with treatment" and "relieved by Imitrex if taken at onset."  (Compare AR 202, 244-46, with id. 242-43). Internal inconsistencies and ambiguities within a doctor's opinion provide specific and legitimate reasons for an ALJ to reject the opinion.  Rollins; 261 F.3d at 856; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999).  Plaintiff contends that "[t]he fact that Imitrex[ ] relieves the symptoms at onset does not mean that [Plaintiff] experiences no symptoms at all."  (Dkt. No. 19 at 6).  However, the ALJ is not questioning whether Plaintiff suffers from any migraine symptoms.  Instead, the ALJ was skeptical that someone whose prognosis is good and whose migraine symptoms are relieved with medication would be incapable of performing any work.

Dr. Bleakley's opinion is also belied by his own treatment notes.  "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." Ghanim, 763 F.3d at 1161.  Dr. Bleakley's treatment records indicate that Plaintiff's symptoms are being controlled with Imitrex.  (AR 281, 290).  Dr. Bleakley observed that Plaintiff's migraine headaches occur only randomly, are relieved by Imitrex, and are "fairly controlled" with the current treatment regimen. (AR 302, 304).  Further, Dr. Bleakley diagnosed migraine without status migrainosus, not intractable, which indicates that

Plaintiff's migraines are responding to treatment. (AR 304). The issue is not whether Plaintiff experiences migraine headaches. Instead, it is whether the headaches, when they occur, are uncontrollable, such that Plaintiff is precluded from all work capacities. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre, 439 F.3d at 1006.

Dr. Bleakley's opinions are also unsupported by clinical testing. "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted). As the ALJ found, "Dr. Bleakley does not provide any specific explanations for why [Plaintiff] is so functionally limited." (AR 28). Indeed, there is nothing in the record that supports Dr. Bleakley's opinion that Plaintiff can only lift less than ten pounds and is incapable of sitting or standing more than two hours in an eight-hour workday. To the contrary, the clinical testing performed was largely unremarkable. (AR 289, 292, 309).

The ALJ properly concluded that "Dr. Bleakley took [Plaintiff's] subjective allegations at face value and merely reiterated those allegations in his reports when making his assertions regarding [Plaintiff's] ability to work." (AR 28). "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti, 533 F.3d at 1041 (citation

omitted). As discussed above, the ALJ's rejection of Plaintiff's subjective complaints was supported by substantial evidence. Here, given that Plaintiff's allegations of disabling symptoms from his migraine attacks are otherwise unsupported in the record, it appears that Dr. Bleakley's opinions were based to a large extend on Plaintiff's self-reports and were, therefore, properly rejected by the ALJ.

These findings provide a specific and legitimate basis for the ALJ to discount Dr. Bleakley's opinions in favor of other opinions. The ALJ properly found other opinions in the record to be better supported by the evidence and more consistent with the record as a whole. See Tonapetyan, 242 F.3d at 1149. Dr. Bleakley's opinions were contradicted by the opinions of the consultative examiner and the state agency consultant. Drs. Gerber and Thomas opined that Plaintiff is capable of "light" exertion, with no concentrated exposure to dust or fumes. (AR 61-62, 209). The ALJ found that these opinions were consistent with the medical record and gave them great weight. (AR 28). He emphasized that the consultative examiner included "detailed clinical findings and narratives explaining and supporting the examiner's medical opinion and functional assessment." (AR 28). The opinions of a consultative examiner and state agency consultant constitute substantial evidence in support of the ALJ's RFC assessment. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008); see Tonapetyan, 242 F.3d at 1149 ("[Consultative examiner's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant].").

1    In sum, the ALJ provided specific and legitimate reasons,

2 supported by substantial evidence in the record, for giving Dr.

3 Bleakley's opinions little weight. Accordingly, because

4 substantial evidence supports the ALJ's assessment of Dr.

5 Bleakley's opinions, no remand is required.

6

7                                **VIII.**

8                            **CONCLUSION**

9

10    Consistent with the foregoing, IT IS ORDERED that Judgment be

11 entered AFFIRMING the decision of the Commissioner. The Clerk of

12 the Court shall serve copies of this Order and the Judgment on

13 counsel for both parties.

14

15 DATED: March 13, 2018

16

17                          _____/S/_____
                            SUZANNE H. SEGAL
18                          UNITED STATES MAGISTRATE JUDGE

19

20

21 **THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW,
LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**

22

23

24

25

26

27

28